McCARTY, J., SPECIALLY CONCURRING:
 

 ¶16. While I acknowledge that we must follow applicable precedent in reversing the circuit court's jurisdictional ruling, all this does is delay the inevitable. Under precedent it is clear that Mr. Montalto was never legally eligible for earned-release supervision (ERS). I write separately to emphasize that what we are bound to do today unnecessarily lengthens the resolution of Mr. Montalto's claim, burdening the petitioner as well as our circuit court.
 

 ¶17. In general, the Court of Appeals is "able to affirm [a] circuit court because of the longstanding rule that we may affirm the trial court when it reaches the right result but for the wrong reason."
 
 McClurg v. State
 
 ,
 
 870 So.2d 681
 
 , 682 (¶6) (Miss. Ct. App. 2004). Yet as pointed out by the majority, the Supreme Court has also ruled that "it was improper for the Court of Appeals to rule on the merits of [a petitioner's] motion without the circuit court doing so first, as the circuit-court had exclusive, original jurisdiction."
 

 Graham v. State
 
 ,
 
 85 So.3d 847
 
 , 851 (¶7) (Miss. 2012).
 

 ¶18. While I appreciate that distinction, which may act to save certain PCRs from denial, in this unique case there seems to be only one possible result. The petitioner pled guilty to a kidnapping charge involving a child under the age of eighteen. When the victim of a kidnapping is under the age of eighteen, kidnapping is statutorily defined as a "sex offense."
 
 Miss. Code Ann. § 45-33-23
 
 (h)(i) (Supp. 2018).
 
 [3]
 
 A person convicted of a sex offense is not eligible for earned-time allowance or, by extension, ERS, which is obtained through earned-time allowance.
 
 See
 

 Miss. Code Ann. § 47-5-139
 
 (1)(d) (Rev. 2015);
 
 Thomas v. Miss. Dep't of Corr.
 
 ,
 
 248 So.3d 786
 
 , 791 (¶20) (Miss. 2018).
 

 ¶19. This Court has repeatedly turned back challenges in very similar cases as the one presented today.
 
 King v. McCarty
 
 ,
 
 196 So.3d 175
 
 , 176 (¶1) (Miss. Ct. App. 2016) ;
 
 Culbert v. Epps
 
 ,
 
 120 So.3d 983
 
 , 985 (¶11) (Miss. Ct. App. 2012) ;
 
 Adams v. Epps
 
 ,
 
 900 So.2d 1210
 
 , 1212-13 (¶10) (Miss. Ct. App. 2005). In
 
 Culbert
 
 , an inmate convicted of a sex offense was mistakenly informed that he had accumulated earned time.
 
 Culbert
 
 ,
 
 120 So.3d at 985
 
 (¶11). Upon realizing the error, MDOC removed the inmate's earned time.
 

 Id.
 

 at 984
 
 (¶2). The inmate subsequently filed a complaint seeking relief, which the circuit court dismissed.
 

 Id.
 

 at (¶3). The inmate appealed, asserting that his due-process rights were violated when MDOC removed his earned time.
 

 Id.
 

 at (¶1). This Court referenced
 
 Adams
 
 in affirming the circuit court's dismissal, noting that it is legally impossible for an inmate to earn time when serving a sentence for a sex offense.
 

 Id.
 

 at 985
 
 (¶¶10-11, 13). We went on to find that because "time was never actually earned, nothing was taken from [the inmate] in violation of his due-process rights."
 

 Id.
 

 at (¶11) ;
 
 see also
 

 Fields v. Ladner
 
 ,
 
 226 So.3d 599
 
 , 602 (¶8) (Miss. Ct. App. 2017) ("[A]n inmate has no vested liberty interest in receiving earned time.").
 

 ¶20. I believe the same situation is present in this case. There can only be one result, and so the better route would be to end this process today instead of reversing and remanding.
 

 ¶21. I also have grave concerns about a concerning pattern of delay exhibited by the State that unnecessarily delayed resolution of the claims made by the defendant. As the majority points out, the defendant previously asked for relief in federal court. During those proceedings, the State repeatedly defied
 
 multiple
 
 orders from both the magistrate and the district court itself to produce transcripts of the proceedings that resulted in a finding he had violated ERS.
 
 Montalto v. Miss. Dep't of Corr
 
 ., No. 3:15-CV-00457-CWR-FKB,
 
 2017 WL 4340273
 
 , at *2-4 (S.D. Miss. Sept. 29, 2017). During a hearing held before the district court, the MDOC hearing officer admitted that there were no transcripts of any hearing because she "made clear that the recordings of many MDOC disciplinary hearings were abandoned."
 
 Id.
 
 at *4. Stunningly, the MDOC officer "testified that she found Montalto guilty because she was instructed to do so
 
 before the hearing began
 
 ...."
 
 Id.
 
 (emphasis in original).
 

 ¶22. After examining the conduct by the State, the district court concluded it was "alarmed by the facts of this case and distressed with the practices at MDOC and the Attorney General's Office uncovered during these proceedings and which
 may never have been exposed but for Montalto asserting that he had been deprived due process and the filing of his motions for contempt."
 
 Id.
 
 at *7. This pattern of behavior meant that "the Attorney General's Office has disregarded Court Orders, presented incomplete information, and submitted patently false statements to the Court."
 
 Id.
 

 ¶23. The district court was greatly troubled by this behavior and concerned with "[t]he nonchalance with which the State adopted false positions" because this "highlights the philosophy all too often shown by MDOC and the Attorney General's Office: ensuring just convictions obtained through just means is not a priority, or even a consideration."
 
 Id.
 
 at *8. The district court recognized the difficulty of defending against the heavy amounts of habeas cases, and that "prisoners file many, many specious and meritless petitions, and those who have the duty to respond may become jaded." The district court warned that "[b]eing jaded is one thing, but refusing to comply with directives from the court is something which cannot be excused regardless of the validity of any defenses to the claims."
 
 Id.
 
 The district court advised the attorneys for the State to revisit the Lawyer's Creed.
 
 Id.
 
 at *8 n.11.
 

 ¶24. Regarding the merits of the case, the district court could not see how MDOC's mock "hearings" revoking the ERS of the defendant "satisfy due process considerations," since "[t]here is no way to verify the contents of proceedings or that they even take place at all, because recordings apparently are not maintained and readily abandoned."
 
 Id.
 
 at *7. "And even if the contents were knowable, they do not affect the hearing officer's determination, as [the MDOC officer] testified that she was instructed by MDOC executives to find Montalto guilty before she heard any evidence."
 
 Id.
 
 The district court concluded: "This admission is more than troubling; it is a betrayal of justice."
 
 Id.
 
 Nonetheless, the district court declined to impose monetary sanctions on the State, and dismissed the defendant's claims for failure to exhaust administrative remedies-where he then made his way to our Court of Appeals.
 
 Id.
 
 at *9.
 

 ¶25. Before this Court, and despite this ruling by a federal district court, the State dug its heels in again. The State asserted in its brief that "Montalto was given a proper hearing for both his RVR and his re-classification, [and] his due process was protected ...." In light of the district court's ruling, and the uncontested facts and procedural posture of this case, I find the State's position statement beggars belief.
 

 ¶26. My colleague Judge Lawrence has recently written that "[t]he entire fundamental foundation of the criminal justice system is that the innocent should suffer no harm under our law and that guilty persons should be held accountable for their illegal acts upon a constitutional and legal investigation and trial."
 
 Foster v. State
 
 , No. 2017-KA-01466-COA, --- So.3d ----, ----,
 
 2019 WL 1349723
 
 , at *3 (¶17) (Miss. Ct. App. Mar. 26, 2019) (Lawrence, J., specially concurring). I would add to this lofty statement that once convicted, we should continue to treat those incarcerated or recently released with dignity and accord them due process as the law requires. As the district court wrote, "No person is stripped of all of his dignity or his right to due process upon incarceration."
 
 Montalto
 
 ,
 
 2017 WL 4340273
 
 , at *8.
 

 ¶27. The better path is one where the State genuinely grapples with the claims made by a petitioner, which will allow our Court to understand the real issues and resolve the dispute placed before us. This will allow all those seeking redress before
 our court system to have a fuller measure of justice and not one plagued by obstruction or delay.
 

 At the time of Montalto's plea, "sex offense" was defined in subsection (g)(i). The Mississippi Legislature subsequently amended section 45-33-23, and the definition of "sex offense" is now found in subsection (h)(i).